**BOWLES, Adm'r of Office of Price Administration, v. AMATO et al.**

**Civil Action No. 808.**

District Court, D. Colorado.

May 7, 1945.

Max D. Melville, Regional Litigation Atty., French L. Taylor, District Enforcement Atty., and I. R. Schwartz, Associate Enforcement Atty., all of Denver, Colo., for plaintiff.

Harold Taft King, of Denver, Colo., for defendants.

SYMES, District Judge.

## MEMORANDUM ON MOTION TO SUPPRESS EVIDENCE

This is an action by the Administrator of the Office of Price Administration to recover treble damages under § 205(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix § 925(e), for alleged overcharges of $831.36 on sales of bananas by defendants Amato between February 1st and October 24, 1944. The action is based on evidence secured by the Administrator from the defendants under subpoena duces tecum dated August 2nd and November 9, 1944, after the defendants had refused to voluntarily turn over such records, claiming privilege and immunity against self-incriminations. This evidence related to the purchase and sale invoices of the defendants.

The matter is before the court on defendants' motion to suppress the evidence thus obtained by the Administrator, on the ground that the plaintiff has violated § 202 (g) of the Emergency Price Control Act of 1942, as amended, and the compulsory testimony act of February 11, 1893, U.S.Code, 1934 Ed., Tit. 49, § 46, 49 U.S.C.A. § 46, which is a part of the Emergency Price Control Act.

The issue is narrowed by defendants' admission that by virtue of subsection 202 (b) of the Emergency Price Control Act and the regulations issued by the Administrator thereunder, Congress gave the OPA the right to seize under subpoenas duces tecum the records of the defendants, but they maintain that § 202(g) of the Emergency Price Control Act protects them against the use of evidence so obtained. Furthermore, the Government concedes the defendants' motion would be good if the defendants were required to testify viva voce as to the evidence involved, or if the records seized under the subpoena had been private papers, and it was sought to bring a penal suit on information thus obtained. It is conceded that defendants made their timely claim of immunity under the act, and the question is, is the immunity from criminal or penal liability granted by the act as to non-privileged records? The compulsory testimony provision reads in part:

"But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before said commission, or in obedience to its subpœna, or the subpœna of either of them, or in any such case or proceeding." 49 U.S.C.A. § 46.

The Government's contention is that this immunity provision has no application to

the production of records, which as here are required by law to be kept for use of the Administrator in the enforcement of the act, or for the benefit of the public. Such records, it says, are not and cannot be privileged under the Fifth Amendment of the Constitution. The defendants cite Boyd v. United States, 116 U.S. 616, at page 633, 6 S.Ct. 524, at page 534, 29 L.Ed. 746, where the Court says:

"And we have been unable to perceive that the seizure of a man's private books and papers to be used in evidence against him is substantially different from compelling him to be a witness against himself. We think it is within the clear intent and meaning of those terms."

In United States v. White, 322 U.S. 694, at page 698, 64 S.Ct. 1248, at page 1251, 88 L.Ed. 1542, the Court says:

"The constitutional privilege against self-incrimination is essentially a personal one, applying only to natural individuals."

And at page 699 of 322 U.S., at page 1251 of 64 S.Ct., 88 L.Ed. 1542:

"Moreover, the papers and effects which the privilege protects must be the *private property* of the person claiming the privilege, or at least in his possession in a purely personal capacity." Citing the Boyd case, supra. [Emphasis ours.]

It will be observed that these two cases—typical of many others—point out that the protection or immunity is given to the private papers of the individual. The question therefore arises whether papers and records kept pursuant to the Federal statute are private papers within the sense that term is used in the cases.

An interesting recent case is Rodgers v. United States, 6 Cir., 138 F.2d 992. That was an action by the United States against the defendant appellant to require him to file certain farm operator's reports pursuant to the cotton marketing quota provisions of the Agricultural Adjustment Act of 1938, 7 U.S.C.A. § 1281 et seq., and recover an amount allegedly due for excess market quotas. The appellant, a producer of cotton, sought to reverse a judgment of the lower court requiring him to file certain farm operator's reports pursuant to the cotton marketing quota and the regulations of the Secretary of Agriculture issued thereunder. The judgment awarded the United States a money judgment by reason of the cultivation and sale of cotton by the appellant in excess of quotas es-tablished under the Agricultural Adjustment Act.

Under the regulations the farmer was required to report on the forms promulgated by the Secretary of Agriculture the necessary data from which it could be determined the sanction imposed for marketing excess cotton quotas. Appellant contended that the sanctions provided under the Act are penalties and to require him to make reports from which the alleged penalties could be ascertained would compel him to be a witness against himself, contrary to the Fifth Amendment.

The court held, briefly, that since Congress may restrict the amount of cotton produced and marketed by farmers, it logically follows that it may require the farmer as a means of enforcing the valid law to keep records to show whether he has in fact complied with the Act and remained within the quota, and then states, 138 F.2d 995:

"The constitutional privilege against self-incrimination is not all-inclusive. There is excluded therefrom papers, records and reports required by law to be kept and made in order that suitable information may be obtained of transactions which are appropriate subjects of governmental regulations."

The court further holds that the records and reports required by the statute in question are quasi public documents and not for the appellant's private use. They are for the benefit of the public and open to inspection by such persons and officers as are authorized under the statute to inspect them. Citing Wilson v. United States, 221 U. S. 361, at page 382, 31 S.Ct. 538, 55 L. Ed. 771, Ann.Cas.1912D, 558.

The court further distinguishes the Boyd case, supra, on the ground that that case held the enforced production of the private books and papers of the owners of the goods sought to be forfeited was violative of the Fourth Amendment, pointing out that the Act there in question provided that the claimant could be required to produce in court his private books, invoices and papers, and that the rule of the Boyd case is carefully differentiated in the Wilson case from the rule applicable here, pointing out that to relieve those engaged in business subject to public regulation of the obligation to keep records and make reports, would extend to individuals an immunity not within the concept of the constitutional prohibition against self-incrimination.

■ Coming to our own Circuit Court of Appeals, Bowles v. Beatrice Creamery Co., 146 F.2d 774, at page 779, it is held that as a means of enforcing a valid law Congress may require the keeping of records reasonably necessary to that end, to show whether there has been a compliance with the law and, page 779:

"As a means of enforcing a valid law, Congress may require the keeping of records reasonably necessary to that end. To require the keeping of records showing whether there has been compliance with a valid law is an appropriate means to a legitimate end. Such records are quasi-public in character and as to them the privilege against self-incrimination under the Fifth Amendment does not apply."

■ It therefore follows that as long as the evidence sought to be suppressed was such as was required to be kept by a valid law of Congress, or duly authorized regulations—which is not here questioned—the same are quasi-public records, and the evidence disclosed thereby cannot be suppressed as long as the defendants are not required to give evidence viva voce, or to produce their private papers.

See also Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566, where it was held that an inspection of a wholesaler's records by the price administration representatives, authorized by statute and regulation, did not violate defendant's rights under the Fourth and Fifth Amendments.

The motion to dismiss and suppress the evidence is overruled.